LEO AND LILLIAN SACK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67657. Filed February 4, 1960.

*Morton J. Glickman, C.P.A.,* for the petitioners.
*Norman L. Rapkin, Esq.,* for the respondent.

### OPINION.

MULRONEY, *Judge:* The respondent determined a deficiency in the petitioners' income tax for 1955 in the amount of $2,014.07. The only issue is whether respondent was correct in disallowing a deduction of $15,580 claimed by the petitioners on their 1955 joint income tax return representing a purported loss from the transfer by them of certain stock.

All of the facts have been stipulated and they are incorporated herein by this reference.

Leo and Lillian Sack, husband and wife, are residents of Hudson, New York. They filed a joint Federal income tax return for 1955 with the district director of internal revenue at Albany, New York. Leo Sack will hereafter sometimes be called the petitioner.

Hudson Knitting Mills Corporation, hereinafter called Hudson, is a corporation organized under the laws of the State of New York, with 400 shares of authorized and outstanding common stock. Petitioner purchased 120 shares of Hudson stock on June 1, 1948, for $12,000. On May 31, 1955, the outstanding shares of Hudson were owned as follows:

| | Shares |
|---|---|
| Leo Sack | 120 |
| Meyer Sack | 40 |
| Joseph Rose | 36 |
| Carl J. Pauker | 57 |
| Michael Pauker | 147 |

Meyer Sack is the son of the petitioner and Joseph Rose is petitioner's son-in-law, and both of them are employees and officers of Hudson.

For a number of years prior to 1955 Hudson was operating at a loss. The Sack and Pauker factions had been in disagreement for some time over the operation of Hudson, and finally the petitioner decided that he would buy out the Pauker interest. On May 31, 1955, petitioner purchased the 204 shares of Hudson stock from the Paukers for $18,250. On June 1, 1955, petitioner transferred 200 shares of Hudson stock to Harry Rose and Irving Levine, who had been successful in the management of enterprises similar to Hudson, in consideration for their contribution of $12,000 to the capital of Hudson, plus their promise to assume the management of the corporation.

In the fiscal year ending January 31, 1955, Hudson showed a net operating loss of $30,383.58. In the fiscal year ending January 31, 1956, Hudson (managed by Harry Rose and Irving Levine from June 1, 1955, to January 31, 1956) showed a net operating loss of $3,926. In the short fiscal period February 1, 1956, to April 30, 1956, Hudson showed a net operating profit of $18,940.61. In the fiscal years ending April 30, 1957 and 1958, Hudson showed a net operating profit of $2,614.69 and $41,796.87, respectively.

On the joint return filed by petitioner and his wife for 1955 he claimed a loss deduction under Schedule D (gains and losses from sales or exchanges of property) in the amount of $15,580, and in an attached schedule stated that he "elects recognition of the loss under the authority of George M. Wright, 18 BTA 471." In his brief the petitioner arrives at a slightly different total, which he computes as follows:

| Shares Transferred | Number | Cost |
|---|---|---|
| Original shares | 120 | $12,000.00 |
| Of shares purchased | 80 | 7,156.80 |
| Total Cost | | $19,156.80 |
| Less 31% of donated surplus [$12,000] | | 3,720.00 |
| Loss | | $15,436.80 |

Respondent disallowed the loss in full.

Petitioner transferred the 200 shares of Hudson stock to Rose and Levine in order to provide the corporation with new capital and management. He claims a loss on the transaction to the extent of the cost of the stock transferred, less the proportionate benefit he received by reason of the increase in value of his retained stock (124 shares) resulting from the new capital ($12,000) being contributed to the corporation.

It is petitioner's contention that the contract for managerial services was no part of the price he realized for his transfer of the stock. Any benefit which he received which came to him indirectly through the probable increase in the value of the stock he retained would be part of the price realized. *Stephen M. Clement*, 30 B.T.A. 757. This would include the indirect benefit of a contract for managerial services which the parties considered valuable. *Commissioner* v. *Wright*, 47 F. 2d 871. In the last cited case where the facts were similar, it was stated:

While by the transaction of surrender the taxpayer did not realize a specific price for the stock, he did realize a presently contemplated advantage to the corporation—and indirectly to himself—consisting of the managerial service of the manager for whom the stock was surrendered and the averting of threatened bankruptcy of the corporation, as well as the further support of the bankers.

The value of the contemplated advantage to a stockholder of a contract for managerial services for the corporation might be somewhat difficult to establish as an abstract proposition. However, when the contract forms consideration for the transfer of stock, resort may be had to the value of the stock at the time of the transfer on the theory that the transferor must have believed the benefits he would realize from the contract were at least as valuable as the stock transferred.[1] This is the rule of *Commissioner* v. *Wright*, *supra*, where it is stated:

We believe that for the purposes of taxation the fair value of the stock at the time of surrender may properly be regarded as the price realized for it by the taxpayer in the form of contemplated advantage. * * *

Under this rule the deductible loss would be the difference between the fair market value of the stock and the basis. We quoted the above rule in *Stephen M. Clement*, *supra*, and pointed out that there the value of the stock at the time of the transfer was not shown by the evidence. In the instant fully stipulated case there is nothing to show the value of the Hudson stock at the time of the transfer, unless it be

[1] There are other instances in stock transfer transactions where it has been held the consideration received by the transferor for his stock is to be measured by the value of the stock. See *John W. Chamberlin*, 32 T.C. 1098, where the taxpayer received a royalty interest in exchange for his stock and we held the value of the stock "might very well have fairly represented the value" of the royalty interest.

considered the price paid Pauker the day before when petitioner purchased the Pauker stock, is such a showing of value. But petitioner argues strenuously that the purchase of stock from the Paukers was "under compulsions" and this sale is not to be considered as any showing of value of the stock. We agree. With the stipulated background of a factional fight that finally led to the sale by the Paukers, it can hardly be said this was an arm's-length transaction of a willing buyer and a willing seller. This leaves the record barren of any showing as to the value of the stock on the date of the transfer or any showing as to the value of the consideration he indirectly received in the form of the new managerial contract—which, according to the record, evidently proved so beneficial to the corporation, and indirectly to petitioner, as a stockholder. At any rate, petitioner had the burden of showing the amount of his loss and this he failed to do by failing to show the value of a portion of the consideration which he bargained for and received in the transfer of his stock. Upon this record we would be unable to make any determination of any loss on the sale of the stock.

*Decision will be entered for the respondent.*