Anthony Granata and Carol Granata v. Commissioner.
Granata v. Commissioner
Docket No. 1908-62.
United States Tax Court
T.C. Memo 1963-309; 1963 Tax Ct. Memo LEXIS 38; 22 T.C.M. (CCH) 1627; T.C.M. (RIA) 63309; November 21, 1963
Louis R. Mayer, for the petitioners. *39 Clarence C. Roby, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1960 in the amount of $479.93. The issues for decision are: (1) Whether petitioners are entitled in the calendar year 1960 to a deduction for a loss in connection with stock ownership in a corporation known as Wash-Well, Inc., and a bad debt deduction for an amount advanced to that corporation. (2) Whether petitioners are entitled in the calendar year 1960 to deductions as business expenses for operation of an automobile, and if so the amount of the deduction allowed. Findings of Fact Petitioners, husband and wife, residing in Cleveland, Ohio, filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue at Cleveland, Ohio. Anthony Granata, hereinafter referred to as petitioner, in December 1958, paid in cash $1,200 for 20 shares of stock of a corporation which was to be formed by petitioner and four other individuals with a paid-in capital of $6,000 represented by 100 shares of stock. At this same time, each of the other four *40 individuals who were joining with petitioner in forming the corporation, Wash-Well, Inc., also paid in $1,200 each to the corporation. On January 9, 1959, articles of incorporation of Wash-Well, Inc., were filed with the Secretary of State of Ohio and recorded by the Secretary of State in the records of incorporation of the State. On February 4, 1959, a certificate for twenty shares of stock of Wash-Well, Inc., was issued to petitioner. Petitioner remained a shareholder and director of Wash-Well, Inc., until about October 11, 1960, but was never an employee of that corporation, and received no compensation from that corporation for any services rendered to it at any time during the years 1959 and 1960. Petitioner's brother, Joseph J. Granata, was president of Wash-Well, Inc. He also owned 20 shares of Wash-Well, Inc., stock until approximately October 11, 1960, for which he had paid $1,200 in 1958. On or about February 1, 1959, the attorney who had done the legal work in connection with incorporating Wash-Well, Inc., filled out a form (Form 2553) of election by small business corporation, had it signed by the five shareholders of the corporation, and mailed it to the Internal *41 Revenue Service. The attorney kept no copy of the form. The office of the district director of internal revenue in Cleveland, Ohio has no record of having received the Form 2553, "Election by Small Business Corporation" of Wash-Well, Inc. For the calendar year 1959 "Wash-Well, Incorporated" filed an income tax return for the taxable year beginning January 1, 1959 and ending December 31, 1959, on Form 1120-S, U.S. Small Business Corporation Return of Income, and on this form showed as the date of election as small business corporation, February 1, 1959. The return showed a net loss of $702.58. Minutes of a regular meeting of the board of directors of Wash-Well, Inc., held on August 30, 1960, state as follows: On motion of Sam Ruvolo, it is resolved that Joseph Milicia be allowed to purchase all assets of the company for the sum of $3,800.00. All outstanding bills through September 1, 1960, are to be paid by the company. Terms of sale cash. Each shareholder must contribute the sum of $600.00 to extinguish current debts, including rental arrearages. The said Joseph Milicia shall agree to save the individual shareholders harmless in relation to the payment of rentals under the existing *42 lease with Gerald Richland and the payment of the mortgage indebtedness payable to Funds For Business, Inc., New York City, New York. Each shareholders shall assign all of his interest in the company to Joseph Milicia in consideration of such assumption of the lease and mortgage. On or about September 20, 1960, petitioner paid in cash to Wash-Well, Inc., $600, and each of the other shareholders of Wash-Well, Inc., including Joseph Milicia, paid a similar amount. Approximately $2,500 of the amount so paid was deposited in Wash-Well, Inc.'s bank account in the National City Bank of Cleveland, and checks were drawn on that account in payment of all outstanding current indebtedness of Wash-Well, Inc., including rental arrearages and certain payments due on chattel mortgages on the machinery which had been purchased by Wash-Well, Inc. The minutes of a special meeting of the directors of Wash-Well, Inc., held on September 29, 1960, state as follows: Be it resolved that at a special meeting attended by all of the shareholders and directors of this corporation, that the resignations of all officers and directors have been accepted, to-wit: Joseph J. Granata, President, Sam Ruvolo, Vice *43 President, Philip V. Bova, Secretary, Treasurer, Anthony Granata, Anthony Mangeri, effective October 11, 1960. On about October 11, 1960, petitioner transferred his 20 shares of stock in Wash-Well, Inc., to Joseph Milicia. Since that date petitioner has not owned any stock in Wash-Well, Inc., or been connected with that corporation in any way. At the time petitioner paid $600 to Wash-Well, Inc., it was his understanding that he was not under a legal obligation to make the payment but he considered that he had a moral obligation to pay this amount so that Wash-Well, Inc., would not become bankrupt. It was petitioner's understanding that Joseph Milicia would take over the corporation only on the consideration that each shareholder pay $600 to the corporation to discharge the corporation's outstanding obligations. Petitioner never at any time received any money or property from Wash-Well, Inc. and was paid no money, property or other consideration for the stock in Wash-Well, Inc., which he transferred to Joseph Milicia except Joseph Milicia's agreement with respect to the leases and chattel mortgages of Wash-Well, Inc. as set forth in the minutes of the meeting of the board of directors *44 of Wash-Well, Inc. of August 30, 1960. Petitioner at the time he paid the $600 to Wash-Well, Inc., in September 1960, did not expect that this amount would be repaid to him by Wash-Well, Inc., or anyone else. Wash-Well, Inc., on April 4, 1961, filed with the district director of internal revenue at Cleveland, Ohio, a Form 1120-S for the year 1960, on which was shown a loss of $4,121.13. This form was signed by Joseph Milicia as president and showed the date of election as a small business corporation as February 1, 1959. On page 3 of the Form 1120-S filed by Wash-Well, Inc., for the year 1960 under "Schedule of Distribution and Income" the following appears: 2. Stock Ownership
Number
Period held
of
1. Name and Address of Each Shareholder
Shares
From
To
(a) Sam Ruvolo
20
1/9/59
12/31/60
(b) Philip V. Bova
20
1/9/59
12/31/60
(c) Anthony Granata
20
1/9/59
12/31/60
(d) Joseph Milicia
20
1/9/59
Present
(e) Joseph J. Granata
20
1/9/59
12/31/60
Totals
Continuation of Schedule of Distribution and Income 7.
6. Share of
Share of
3. Percentage
undistributed
long
of time
4.
5. Dividends
taxable in-
devoted to
Compen-
come or net
capital
business
sation
Dates
Amounts
operating loss
(a) 20
0
0
0
$ 824.22 loss
(b) 20
0
0
0
824.22
(c) 20
0
0
0
824.22
(d) 20
0
0
0
824.22
(e) 20
0
0
0
824.22
Totals
$4,121.13 loss
*45 8. Divi-
9.
dends
Amount
3. Percentage
entitled
taxable
10. Nondividend
of time
term
to exclu-
as ordi-
distributions
devoted to
sions and
nary
business
gain
credit
income
Date
Amount
(a) 20
0
0
0
0
0
(b) 20
0
0
0
0
0
(c) 20
0
0
0
0
0
(d) 20
0
0
0
0
0
(e) 20
0
0
0
0
0
Totals
During the year 1960 petitioner was president of Rapid Laundry Co., Inc. a corporation incorporated under the laws of the State of Ohio, and his brother, Joseph Granata, was vice president of that corporation. Also during 1960, petitioner was one of five directors of the Cleveland Federation of Musicians. Petitioner was paid a salary by Rapid Laundry Co., Inc. for the year 1960 and on his 1960 income tax return reported $6,625 received from Rapid Laundry Co., Inc. Petitioner was on the board of directors of the Cleveland Federation of Musicians and attended the meetings of the board of directors every Monday evening during the year 1960. During part of the year 1960, petitioner was paid $16 for each such meeting he attended and for the remainder of the year $20 for each such meeting he attended. Petitioner on his income *46 tax return for 1960 reported payments received from the Cleveland Federation of Musicians on which no amount for income tax was withheld of $856, and a payment of $20 on which he showed income tax withheld. The board of directors of Rapid Laundry Co., Inc., at a meeting held on January 3, 1959, adopted the following resolution: RESOLVED that the active officers of this corporation are as a condition of their employment required to use their personal automobiles for company business to pick up and deliver customers' merchandise whenever necessary; that prior to any such use for company purposes the owner of said automobile shall show to this corporation evidence of a liability insurance policy in force. This resolution was in effect through the year 1960. During the year 1960, petitioner customarily drove his personally owned automobile each weekday morning from his home to the place where the business of Rapid Laundry Co., Inc., was operated, a distance of about 4 miles. Sometimes on his way to the place of business of Rapid Laundry Co., Inc., he would stop by the place of business of Wash-Well, Inc., which would add approximately 2 miles to the distance. During 1960 petitioner *47 customarily drove from the place of business of Rapid Laundry Co., Inc., to his home at the conclusion of his day's work at Rapid Laundry Co., Inc. every weekday except Monday but sometimes would go by the business of Wash-Well, Inc., on his way home. On every Monday evening during the year 1960 petitioner, instead of returning to his home at the conclusion of his day's work at Rapid Laundry Co., Inc., drove to the meeting of the board of directors of the Cleveland Federation of Musicians, a distance of approximately 6 miles. This meeting commenced at 5 p.m. and concluded at about 8:00 o'clock. Sometimes on Monday evenings after the conclusion of the board of directors' meeting, petitioner would drive his car, and sometimes ride with another director of the Cleveland Federation of Musicians to downtown Cleveland and visit for a short time with musicians playing in various nightclubs in the downtown Cleveland area who were members of the Cleveland Federation of Musicians. Petitioner was not required to make these visits and in fact not all of the directors did make these visits. However, during these visits petitioner discussed with the musicians problems which he subsequently brought *48 to the attention of the board of directors of the Cleveland Federation and petitioner considered these visits to be very helpful in the discharge of his duties as a director of the Cleveland Federation of Musicians. Sometimes when petitioner was in downtown Cleveland visiting with the various musicians, it was necessary for him to park his automobile in a parking lot for which he paid a parking fee. At the conclusion of the meeting of the board of directors of the Cleveland Federation of Musicians or after visiting the musicians, petitioner would drive from the downtown Cleveland area to his home, a distance of approximately 10 miles. Rapid Laundry Co., Inc., was a corporation operating a small laundry business, and petitioner performed various duties as an officer and employee of the corporation. The corporation did not have a regular pick-up and delivery service for laundry and dry cleaning and at times petitioner would drive his personally owned automobile to pick up laundry and dry cleaning from a customer and return such laundry, and dry cleaning to the customer. Petitioner was not reimbursed by Rapid Laundry Co., Inc., for the expenses in connection with use of his personally *49 owned automobile to pick up and deliver laundry. At the beginning of the year 1960 petitioner owned a 1955 Ford automobile which he had purchased in 1955, and on March 22, 1960, he purchased a new 1960 8-cylinder Oldsmobile sedan and turned in his 1955 Ford as a trade-in on the Oldsmobile. The cash delivered price of the 1960 Oldsmobile was $3,878.99. Petitioner was allowed $863.99 for his 1955 Ford on the price of the Oldsmobile. Petitioner carried insurance through Thomas Unik Company Insurance Agency with Manhattan Insurance Company on the 1955 Ford until it was traded in, and thereafter on the 1960 Oldsmobile. During the year 1960 petitioner paid insurance with respect to these two automobiles in the amount of $125. Petitioner paid cash for oil and gasoline during the year 1960 and also paid cash for other expenses in connection with his automobiles. During the year 1960, petitioner drove his personally owned automobiles a total of approximately 6,000 miles including his driving for personal use and for business. Petitioners on their 1960 income tax return claimed a deduction for a loss of $1,824 which they showed on Schedule D to consist of a $1,200 long-term capital loss *50 from 20 shares of stock of Wash-Well, Inc. deductible to the extent of $1,000 and a loss from property other than capital assets of $824 described as "cash loan to Wash-Well, Inc." In computing the long-term capital loss on the 20 shares of Wash-Well, Inc. stock, petitioners on their income tax return showed a gross sales price of that stock of zero and a cost or other basis of $1,200. Petitioners on their income tax return claimed as a deductible business expense in arriving at their net taxable income the amount of $513.95 as "Net car expenses" computed as follows: Gas. oil and servicing
$ 185.90
Repairs
48.00
Insurance
134.00
Rent and parking
60.00
Depreciation (see below)
600.00
Other
Total car expenses
$1,027.90
Less 50% for personal use
513.95
Net car expenses
$513.95
Respondent in his notice of deficiency to petitioners attached a form 2947, "Short-Form Statement", in which he set forth the deficiencies, below which appeared the following: The above deficiencies are based on adjustments and explanations as disclosed in the report of examination, a copy of which was forwarded to you on February 14, 1962. Under date of February 14, 1962, there *51 was forwarded to petitioners by the district director of internal revenue a letter which stated that attached thereto was a report. The attached report was on a form, the first page of which showed figures placed in columns showing the taxable income as shown on petitioner's tax return, the increase or decrease therein, and the resultant tax computations. On this page of the report under the printed item "Increase [decrease] in income" is shown the figure $2,337.95. On the second page of this form is handwritten the following: The following deductions have been disallowed
as they have not been substantiated:
Auto expenses
$ 513.95
Loss from worthless securities
1,000.00
Bad debt
824.00
$2,337.95 No further explanation of the adjustments appears in this document. In their original petition filed in this case, petitioners stated that the entire amount of the deficiency was in dispute and that the determination of tax set forth in the notice of deficiency was based upon the following errors: A. Disallowance of Bad Debt
$824.00
B. Disallowance of Transporta-
tion Expense
856.00 The petitioner recited as the facts upon which petitioners *52 relied the following: C. The petitioner sustained a loss in his trade and business; D. The petitioner incurred transportation expense which was ordinary, reasonable and necessary. At the conclusion of the taking of evidence in this case petitioner's counsel moved to amend his petition and was allowed 10 days within which to file a written amendment. [1]
After the conclusion of the trial petitioners filed an amended petition in which they stated that the entire deficiency determined by the respondent for the calendar year 1960 was in dispute and assigned the following *53 errors: A. Disallowance of shareholder's dis-
tributive share of net operating
loss form Small Business Corpo-
ration
$824.00
B. Disallowance of Transportation Ex-
pense
513.95
C. Disallowance of loan to corporation
as a business bad debt
600.00 The amended petition recited as the facts upon which petitioners relied the following: D. The petitioner sustained a net operating loss as a shareholder of a small business corporation. E. The petitioner incurred transportation expense which was ordinary, reasonable and necessary. F. The petitioner sustained a business bad debt. Opinion Respondent in his brief states the issues with respect to petitioner's claimed loss with respect to his stock in Wash-Well, Inc., as being whether petitioners are entitled to a deduction in the amount of $824 allegedly attributable to the operations of a small business corporation and whether petitioners are entitled to a deduction of $600 for an alleged business bad debt. Beneath this statement of the issues appears the following: ISSUES NOT DISPOSED OF BY PLEADINGS The statutory notice of deficiency in this case disallowed for lack of substantiation the following items *54 claimed by the petitioners on their return for 1960. (See Jt. Ex. 2-B) Auto expenses
$ 513.95
Loss from worthless securities
1,000.00
Bad debt
824.00
Total
$2,337.95
In the amended petition filed subsequent to the trial of the case, the petitioners put in issue the total deficiency determined by the Commissioner; however, paragraph 4 of the petition raised as issues the three questions set forth above. For this reason, the respondent assumes: (1) The disallowance of the $1,000.00 securities loss has been conceded by the petitioners, and (2) the disallowed bad debt deduction of $824.00 either (a) has been conceded in full and in lieu thereof the petitioners have claimed a net operating loss deduction of $824.00, and the $600.00 bad debt deduction mentioned in the amended petition represents a new issue, or (b) the disallowed $824.00 bad debt deduction has been conceded except to the extent of $600.00 and the $824.00 net operating loss deduction represents a new issue raised by the amended petition. In any event it is assumed that the three assignments of error set forth in the amended petition represent all of the questions raised by the petitioners with respect *55 to the Commissioner's determination in this case. Petitioners have filed no brief in this case. The record in this case is replete with explanation of petitioner's claimed losses in connection with Wash-Well, Inc., including his loss from his disposition of his stock. The record shows that petitioner realized that the loss on his stock for computing loss on its disposition would be reduced to the extent that he was entitled to deduct any net operating loss of Wash-Well, Inc., on his personal income tax return. The record clearly shows that respondent was under no misconception that petitioner was claiming any loss or deduction to which he might be entitled in connection with his investment in Wash-Well, Inc. Since the total deficiencies were placed in dispute we consider that petitioner is contesting respondent's disallowance of his losses in connection with Wash-Well, Inc. We think the pleadings sufficient to raise the issue of whether petitioner is entitled to a deduction of any amount in connection with his investment in Wash-Well, Inc., stock and if so, the amount of the deduction to which petitioner is entitled. The record shows that petitioner paid $1,200 cash for his Wash-Well, *56 Inc., stock and that as of October 11, 1960, when he transferred his interest in that stock to Joseph Milicia, he had received no money or property or payments of any kind from Wash-Well, Inc., or Joseph Milicia except insofar as Joseph Milicia's agreement to indemnify petitioner for liability on the leases and chattel morigages might be considered a payment, but had paid $600 more into the corporation. Since after October 11, 1960, petitioner no longer had any interest in Wash-Well, Inc., it is clear that he had expended $1,800 in connection with his ownership of stock in that corporation as of October 11, 1960, and our only question is whether any portion of this amount is deductible by petitioner in computing his taxable income for the year 1960. We agree with respondent that petitioner has failed to establish that he is entitled to a deduction for 1960 for a net operating loss of a small business corporation under the provisions of section 1374 of the Internal Revenue Code of 1954. [2] The record shows that a form for an election to report income as a small business corporation was filled in on behalf of the stockholders of Wash-Well, Inc., signed by the *57 stockholders, and mailed to the Internal Revenue Service. There is no record in the office of the district director at Cleveland, Ohio, that this form was received in that office. Even if the provisions of section 7502 could be construed to consider mailing as filing, which is doubtful where there is no showing of the receipt of the document mailed, it is clear that that section only applies where the envelope in which the document is contained is properly addressed, which fact the evidence here fails to show. Even if a proper filing of a form for an election were shown, the record does not show that the election was in accordance with the respondent's regulations. Section 1.1372-2, Income Tax Regulations, requires that a Form 2553 containing the information required thereon and a statement of consent of each shareholder of the corporation be filed with the district director with whom the corporation's return is to be filed. The evidence does not show that the form which was placed in the envelope mailed by Wash-Well, Inc.'s attorney to the Bureau of Internal *58 Revenue, contained the information required to be set forth therein or that a proper statement of consent of each shareholder in the form set forth in section 1.1372-3, Income Tax Regulations, was included with the form mailed. However, if the record did show that Wash-Well, Inc., made a proper election to report income as a small business corporation petitioner would nevertheless have failed to show that he is entitled to a deduction in 1960 for any amount of net operating loss of that corporation. There is no proof in the record that Wash-Well, Inc., actually sustained a net operating loss in the year 1960. The loss of the corporation referred to by section 1374 is a loss for the entire taxable year even though a particular stockholder may deduct only his prorata share of such loss depending upon the number of days in the taxable year for which he was a stockholder. The only evidence other than its income tax return purporting to show a loss of Wash-Well, Inc., during 1960 are certain books, checks, and bank statements of that corporation running only through September 1960. The record contains no information as to whether the operations of Wash-Well, Inc. *59 , for the last 3 months of 1960 resulted in gain or loss. The fact that the return shows a loss does not prove that the corporation sustained such a loss. Our holding that petitioner has failed to establish that he is entitled to a deduction in 1960 for a net operating loss of a small business corporation does not dispose of the issue of whether he is entitled to any deduction in that year in connection with his disposition of his Wash-Well, Inc. stock. A stockholder in a small business corporation may sustain a capital loss upon the sale or exchange of his stock deductible to the extent provided by section 1211(b) or an ordinary loss from the disposition of his stock deductible under section 165. Section 1376(b)(1) provides for a reduction in the basis of a shareholder's stock by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to his stock, and section 1376(b)(2) provides ofr a similar reduction in any indebtedness of an electing small business corporation to a shareholder if deductible net operating losses exceed the shareholder's adjusted basis of his stock. Since we sustain respondent that petitioner is entitled *60 to no deduction for a net operating loss of an electing small business corporation for the year 1960, petitioner in 1960 had a basis in his Wash-Well, Inc., stock of $1,200 except to the extent that prior net operating losses of Wash-Well, Inc., might have reduced that basis. Wash-Well, Inc., was incorporated in 1959 and in its Federal income tax return for its first year reported a net operating loss of $702.58, petitioner's one-fifth of which would be $140.51. It might be questioned whether petitioner's proportionate share of any 1959 loss reported by Wash-Well, Inc., would reduce his basis in his Wash-Well, Inc., stock, since there is no showing that Wash-Well, Inc., was an electing small business corporation. However, since the burden is on petitioner to establish all facts to show that he is entitled to a deduction and he has failed to establish that the basis of his stock should not be reduced by the amount of the reported loss of Wash-Well, Inc., for 1959, we consider it proper to reduce petitioner's basis in his Wash-Well, Inc. stock by $140.51. This leaves a remaining basis to petitioner in 1960 in his Wash-Well, Inc., stock of $1,059.49. There remains the question of whether *61 petitioner disposed of his stock in 1960 in such a manner as to have sustained a deductible loss in the amount of his basis in that stock or any portion of that basis. The record is clear that petitioner made a final disposition of his stock in October 1960. We have held in cases where a taxpayer disposed of stock other than by a sale or exchange and did not receive anything of value in return for such disposition by way of enhancement of the value of his remaining stock or otherwise, such taxpayer sustained an ordinary and not a capital loss from the transaction. Budd International Corporation, 45 B.T.A. 737, 756, reversed on other issues 143 F. 2d 784 (C.A. 3, 1943). Cf. Estate of William H. Foster, 9 T.C. 930, and Leo Sack, 33 T.C. 805 (1960). If a taxpayer disposes of his stock by sale or exchange, he sustains a capital loss to the extent that the money or property received is less than his basis in his stock. In C. U. Connellee, 4 B.T.A. 359, 366 (1926), we held that the surrender by a taxpayer of his stock in a corporation for release from further performance by the corporation there involved of a contract was *62 a sale or exchange of stock. We further held that the release received by the taxpayer in C. U. Connellee, supra, had no fair market value and therefore the taxpayer was returned no portion of the cost of his stock in the exchange. In the instant case it is clear that petitioner in return for the transfer of his stock did receive the agreement of Joseph Milicia to hold him harmless in relation of payments of rentals under a lease and payment on mortgage indebtedness. It was petitioner's opinion that he had no legal liability for these obligations of the corporation but did have a moral obligation. While the evidence fails to show whether in fact any personal liability existed on petitioner for any of these indebtednesses, it is clear from the evidence that all current indebtednesses of the corporation were paid by the stockholders to the date of the transfer of petitioner's stock. Petitioner actually paid $600 to clear up the corporation's debts including payments of arrears in rent and payments on the chattel mortgages. Petitioner's testimony and that of Joseph Granata, establishes that the $600 was in full discharge of all then existing indebtedness of Wash-Well, Inc. *63 , for which petitioner might be considered either legally or morally obligated. It is equally clear that if petitioner were personally liable for rental payments and chattel mortgage payments of Wash-Well, Inc., he was not released therefrom by transfer of his stock to Joseph Milicia but that Joseph Milicia merely agreed to indemnify him from loss. In return the business was transferred to Joseph Milicia. We believe that the record is reasonably clear that this indemnity agreement by Joseph Milicia to petitioner and the other stockholders had no value in excess of the assets of Wash-Well, Inc., and therefore the transfer of stock to Joseph Milicia was an exchange of that stock for an indemnity agreement having no fair market value and that petitioner sustained a capital loss on the exchange deductible to the extent of $1,000 under section 1211(b). Respondent contends that since at the time petitioner paid the amount of $600 to Wash-Well, Inc., he did not expect to be repaid, this payment was not a loan and petitioner has failed to show that he sustained a bad debt loss in 1960 because of this payment. Where stockholders make advances to corporations knowing that they will not be *64 repaid, the amount of such advances are not deductible. American Cigar Co. v. Commissioner, 66 F. 2d 425 (C.A. 2, 1933), affirming a Memorandum Opinion of this Court. It is clear here that petitioner knew at the time of paying the $600 that he would not be repaid by Wash-Well, Inc. The evidence is not clear why petitioner made the payment except that he felt some type of moral obligation to see that Wash-Well, Inc., did not go into bankruptcy. It may be that petitioner did in fact have some form of personal liability as guarantor on the leases and chattel mortgages on machinery of Wash-Well, Inc. However, since the burden is on petitioner to establish that he is entitled to any deduction claimed, we cannot assume that he was in fact so obligated. If in fact petitioner made payments as a guarantor of the obligations of Wash-Well, Inc., he might have sustained a further capital loss. Cf. Putnam v. Commissioner, 352 U.S. 82 (1956). However, the record here is inadequate to show such a further capital loss. Certainly, the record fails to show any basis on which petitioner is entitled to deduct the $600 paid to Wash-Well, Inc., in 1960 as a bad debt or as an ordinary *65 and necessary business expense. Cf. Carl Reimers Company, 19 T.C. 1235 (1953), affirmed 211 F. 2d 66 (C.A. 2, 1954). The final question is whether petitioner is entitled to a deduction as a business expense for any part of the cost of operation of his automobile in 1960 and if so the amount thereof. Respondent argues that petitioner has shown nothing to support any expenses in connection with the operation of his automobile and that therefore no deduction should be allowed even if petitioner is considered to have shown some use of the automobile for business purposes. Petitioner introduced documentary evidence to show the cost to him of his 1960 Oldsmobile and the amount which he paid in 1960 for insurance of his automobiles. Petitioner testified from recollection as to the amount of his other expenditures in operation of his automobiles. This testimony is far from precise but does show that petitioner purchased oil and gasoline for his automobile in some amounts in 1960 and paid some amounts as parking fees on Monday evenings when he went to visit the various musicians who were members of the Cleveland Federation of Musicians of which he was a director. *66 Respondent in his brief states with respect to petitioner's claim for transportation expenses: If the Court believes Mr. Granata's testimony, then "something was spent" for transportation. But "Cohan" is not an "honest face" rule. Mr Granata very easily could have kept a simple record of his business use of his car and of the expenses incurred in its use. He did not. For the Court to hold that Mr. Granata is nonetheless entitled to "something" would be a breach of faith with those taxpayers who do keep records and a repudiation of the Commissioner's right to require record keeping. The Court does consider petitioner a witness whose testimony is worthy of belief. There was no indication of evasiveness in his answers to questions but merely an inability to remember dollar amounts with exactness. His testimony as to mileage driven was precise. It was apparent, however, that petitioner considered that the expenses of driving from his home to the place of business of Rapid Laundry Co., Inc., and back home and of driving from downtown Cleveland on Monday evenings to his home, as well as driving by the place of business of Wash-Well, Inc., of which he was not an employee, all constituted *67 business use of his automobile. For this reason it is difficult to determine on this record the amount of deduction to which petitioner is entitled for business use of his automobile. It is too well settled to require citation of authority that commuting expenses are not deductible. Petitioner has shown no basis in the evidence here for deducting any expenses of driving to the place of business of Wash-Well, Inc. The record is clear that petitioner is entitled to deduct the 6 miles per week of driving from Wash-Well, Inc.'s place of business to his second place of employment as a director of the Cleveland Federation of Musicians. It is difficult to determine the amount of use petitioner made of his automobile in 1960 in driving for Rapid Laundry Co., Inc. Also, there is no showing that petitioner's 1955 Ford was not fully depreciated by the beginning of 1960, so that the only depreciation allowable would be for the 9 months during which petitioner drove his 1960 Oldsmobile. However, bearing heavily against petitioner for the inadequacies of the record, we hold that he is entitled to deduct $200 in the year 1960 as a business expense in connection with the use of his automobile. Cohan v. Commissioner, 39 F. 2d 540 *68 (C.A. 2, 1933), and Harold Haft, 40 T.C. 2, 7 (1963). Decision will be entered under Rule 50. Footnotes
1. The transcript shows the following in this connection: Mr. MAYER: * * * I would like to ask the Court one question. Is it the proper thing for me to do to make a motion to amend the petition? THE COURT: I should think you would need to, because, actually, the return put this originally under gains and losses from sales of property and explained it as a bad debt or cash loan to this company. MR. MAYER: Yes. THE COURT: So you, by all means, should amend your petition to conform to the return. MR. MAYER: We make that motion. THE COURT: How long will you need to reduce this petition to writing?↩
2. All references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩